EX PARTE ENA AIDA ESPÉNDEZ PERICÁS ET AL., Petitioners; VIRGINIA SÁNCHEZ WIDOW OF ESPÉNDEZ, Appellant.

No. 12239. Decided May 15, 1962.

*Víctor A. Coll* for appellant. *Juan L. Cruz Rosario, Héctor González Blanes,* and *Aldo Segurola de Diego* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo and Mr. Justice Rigau.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Within the trial of judicial administration of the property left upon the death of Ernesto Espéndez Mandés there arose a controversy as to the community or separate char-

acter of certain real property. By stipulation of the parties in interest, evidence was heard on the matter and the question having been submitted for decision, the trial court held that a rural property of approximately 76 cuerdas situated in the ward of Sabana Llana, of Río Piedras, and a lot and structure on Brumbaugh Street No. 1176 of that municipality were the separate property of the testator.[1] It further held that the presumption of community property of the other properties of the estate, namely, two properties of 25 and 7 cuerdas in the ward of Sabana Llana and a residential house erected on the separate property of 3.50 cuerdas referred to in footnote 1, had not been overcome. The widow, Virginia Sánchez, appealed from that portion of the judgment which recognized the separate character of the aforesaid properties.

Testator Espéndez died on July 20, 1953 under an open will executed eight months prior thereto in which, after specifying the properties owned by him, he stated that "his only separate property consists of a parcel of land of three and one half cuerdas ... and a house erected thereon," [2] and that the remainder of his properties "have been acquired with common property owned by him and his present wife, Virginia Sánchez."

The second marriage contracted by Espéndez and Iluminada Crespo was dissolved by judgment of divorce of June 2, 1944. Thirty days later he contracted third and last marriage with Virginia Sánchez. The community partnership

---

[1] The separate character of a property of 3.50 cuerdas situated in the ward of Sabana Llana was not discussed because it was property brought by the testator to his last marriage.

[2] He identified the separate character of this real property as follows: "The parcel was adjudicated to him by deed of division of property and liquidation of community property between him and his former wife, Iluminada Crespo. He constructed the house with his separate money." Yet, as has been stated, the trial court concluded that the building was community property. No appeal was taken from this portion of the judgment.

of the second marriage was liquidated on October 6, 1944, the following properties having been adjudicated to the testator: (a) a rural property of 188.109 cuerdas situated in the wards of Maguayo and Espinosa, of Dorado and Vega Alta, which he sold on August 1, 1945 for the price of $31,000;[3] (b) a property of 3.50 cuerdas in the ward of Sabana Llana of Río Piedras; (c) a lot and structure in Las Palmas Development of Santurce;[4] (d) cattle;[5] (e) an automobile valued at $1,500; (f) a share in a business known as Hotel América, which he sold on June 12, 1945;[6] (g) a wagon valued at $600; and (h) $1,300, proceeds of the sale of an automobile.

After contracting the third marriage Espéndez acquired the properties involved in the controversy herein: (a) on October 24, 1944, a lot of 668.15 square meters for the price of $2,500, and on December 5 of that year an adjoining lot of 142.50 square meters for $500. On June 12, 1947, Espéndez and his wife mortgaged the lot of 668.15 square

---

[3] At the time of the liquidation of the community property this property was encumbered by a mortgage in favor of the Federal Land Bank of Baltimore, reduced to $3,606.86. This mortgage credit was cancelled when a $9,200 first mortgage was constituted on June 22, 1945 in favor of that agricultural credit institution, and a second $5,800 mortgage in favor of the Land Bank Commissioner. The purchaser retained $15,000 from the selling price of $31,000 to pay off these mortgages, delivered $6,000 to vendor Espéndez in the act of execution, and the remaining $10,000 was paid when other encumbrances and liens appearing from the Registry of Property were cancelled. The date on which the vendor received this balance was not established. This is one of the many gaps in the evidence introduced.

[4] The testator sold this real property prior to his death. Once again the evidence does not establish either the date or the amount of the selling price.

[5] The deed of division and liquidation of community property is silent on the value of the cattle adjudicated to the testator. The oral evidence consisting of the testimony of the divorced innocent spouse seeks to establish that there were many head of cattle, but the number was not determined. Nor was evidence introduced on the date of sale of this asset.

[6] The net selling price was $10,500, of which $4,305 corresponded to the testator, namely, in proportion to his contribution of $6,250 to the $15,000 capital stock of the partnership Márquez y Compañía.

meters, and in the mortgage deed it was stated that a two-story reinforced concrete house stood on the said lot. This structure was constructed between October 1944 and June 1947.[7] And (b) on December 19, 1944, a property of 75.96 cuerdas situated in Sabana Llana, for the price of $13,000.[8]

Espéndez' income tax return for the calendar year 1944, shows a "net income from several businesses" of $3,262.82, and in 1945 a gross income of $5,803.09 from salary; ($550), gain from the sale of the property of 188.109 cuerdas and a share in the Hotel América ($4,353.51), and profits yielded by the Hotel América and Savoy Club businesses ($899.58). The evidence discloses that at this time Espéndez and other persons were operating several bar and cabaret businesses in different places of the metropolitan zone, and that he had also acquired early in 1946 a store known by the name "El Estilo" which he sold on December 3, 1946.[9]

After specifying the properties which are the separate property of each spouse and those which are community property, § § 1299 and 1301 of the Civil Code, 31 L.P.R.A. § § 3631 and 3641, § 1307 of the Civil Code, 1930

[7] We have been unable to determine the date this building was constructed nor its cost, for the evidence contains no reference to these particulars.

[8] The purchaser retained $4,000 from the aforesaid price of $13,000 in order to pay off a mortgage which was subsequently cancelled on December 3, 1945. He paid $9,000 in the act of execution.

[9] The selling price was $14,544.84, but the vendors, the Espéndez spouses, bound themselves to pay $1,355.72 representing two obligations constituted in favor of Manuel Otero. The net price was therefore $13,189.12. The trial court erroneously concluded that the net amount received was $7,467.53 in considering that the selling price was $14,000 and that the purchaser had retained $7,467.53 for the payment of debts of the business, when the fact is that, with the exception of the obligation for $1,355.72 of Mr. Otero, the purchaser assumed the payment of the debts *in addition* to the price. Moreover, the purchaser apparently did not pay the full price in the act of the sale, since according to subsequent income returns Espéndez received interest from the said purchaser, which we assume is interest on some deferred price.

There is no evidence on the exact date of the purchase of "El Estilo" nor on the amount invested in it.

ed., 31 L.P.R.A. § 3647, which is the keystone of this litigation, provides that "All the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife." CASTÁN says that this presumption responds to a desire to resolve the doubts which so readily and frequently arise with respect to the source and character of certain properties, and "at the same time to prevent that mere statements made by the interested parties may conceal actual gifts between the spouses." [10] ESPÍN more simply says that the presumption stems from the desire "to prevent possible fraudulent actions by the spouses as against third parties." [11] PUIG PEÑA,[12] SCAEVOLA,[13] SANTAMARÍA,[14] and MANRESA [15] share the same view. Hence, the holding that not only is the burden of proof to overcome the presumptive character of property acquired by onerous title during the marriage upon the party asserting its separate character, *Blanes* v. *Mestre*, 83 P.R.R. 377 (1961); *Valderrama* v. *Lacén*, 83 P.R.R. 58 (1961); *Heirs of Escalera* v. *Barreto*, 81 P.R.R. 580, 588 (1959); *Babilonia* v. *Registrar*, 62 P.R.R. 661 (1943); *Alum* v. *Registrar*, 37 P.R.R. 830 (1928), but that the evidence must be complete and sufficient to destroy it,[16] and that is why the authorities have been most demanding as respects the quality and quantity of the evidence required therefor.[17] But when

---

[10] 5-1 *Derecho Civil Español, Común y Foral* 213 (1954).

[11] 4 *Derecho Civil Español* 151 (1956).

[12] II-I *Tratado de Derecho Civil Español* 304 (1953).

[13] XXII *Código Civil* 232, 233 (1905).

[14] II *Comentarios al Código Civil* 422–23 (1958).

[15] 9 *Comentarios al Código Civil Español* 595–99 (1950).

[16] MANRESA, *op. cit.* at 598.

[17] ESPÍN, *op. cit.* at 151. In an article published in *Revista de los Tribunales* 529 (1919), author MARCOS A. NOGUEROLES maintains that in order to establish the separate character of property acquired during the marriage it is absolutely necessary (1) to state in the instrument of acquisition that the purchase is for one of the spouses; and (2) that it be shown that the price of such acquisition is paid by the spouse in whose name the purchase is made. See, however, arts. 95 and 96 of the Regulations of

the controversy as to the character of the property is between the spouses or between the heirs of one of them and the surviving spouse, without injuring the rights of third parties who may have contracted relying on the favorable presumption of the community character, then the inflexibility and exigency of the evidence disappear and it is sufficient to establish to the trier's satisfaction that the circumstances point to the fact that the properties have been acquired by investing separate property and not at the expense of the community property, it not being indispensable to identify the exact source of the funds invested or reinvested in the acquisition. SCAEVOLA determines clearly the scope of the presumption in saying that "it is not to be understood that merely because there exists a doubt the properties must be deemed to be community property ...," and adds that "the presumption of § 1407 *does not apply to cases of doubt, but to those in which there is no evidence to the contrary.*" [18] That is why the principal function of the court in these cases is to determine, on the evidence as a whole, the manner in which the property in litigation came into the marriage.

■■ Our case law has endorsed this distinction as to the degree of evidence necessary to overcome the presumption under discussion. Thus, in registration cases, in order to prevent prejudice to third parties, we have been strict and require that in order to record as separate the property acquired by valuable consideration during marriage, such fact must be established fully and to the satisfaction of the registrar by documents evidencing sufficiently the separate character of the funds invested. *González* v. *Registrar*, 73 P.R.R. 443 (1952) ; *Vilella* v. *Registrar*, 64 P.R.R. 405, 407

the Spanish Mortgage Law of 1947 and the commentary of ROCA SASTRE on the effect of these provisions on the presumption of § 1407 of the Spanish Civil Code in III *Derecho Hipotecario* 167–70 (1948). See, also, MANUEL GONZÁLEZ ENRÍQUEZ, *Repercusiones Registrales del Artículo 1407 del Código Civil*, 37 *Revista de Derecho Privado* 817 (1953).

[18] SCAEVOLA, *op. cit.* at 233.

(1945) ; *Díaz* v. *Registrar*, 63 P.R.R. 259, 261 (1944) ; *Rucabado* v. *Registrar*, 50 P.R.R. 360, 363 (1936) ; *Capó* v. *Registrar*, 46 P.R.R. 506 (1934) ; *Cabassa* v. *Registrar*, 38 P.R.R. 226 (1928). Specifically, in *Blanes* v. *González*, 60 P.R.R. 553, 559 (1942), reiterated in *Cruz* v. *Heirs of González*, 72 P.R.R. 291, 301 (1951), we have held that when the controversy is between husband and wife the courts should not be so strict as to the sufficiency of the evidence.

 Is the evidence offered in the instant case sufficient to overcome the presumption of community property? In the first place, it is well to note that the testator's statement on the character of the properties specified in his will is not conclusive on the matter and that it may be challenged by evidence on the separate character of the investment. *Guerrero* v. *Heirs of Vilá*, 34 P.R.R. 594, 598 (1925).[19] Weighed as a whole, we agree with the trial court that the evidence points out preponderantly that the property of 75.96 cuerdas, situated in the ward of Sabana Llana, was not acquired at the expense of the property of the community partnership. The purchase was made hardly five months after contracting marriage and two months after the liquidation of the previous community partnership; the income reported by the testator for the entire year 1944 was short of $3,200; and everything seems to indicate that when the liquidation was made Espéndez had cash money, since in the same act he gave his wife $4,500 to pay off a mortgage on the real property which was adjudicated to her, and $5,000 as compromise for any obligation which he might have to support his innocent divorced wife. On the other hand, the appellant did not make the least attempt to establish even an indicium on the source of the $9,000 of the price paid, save that she attempted to rely on the discredited and un-

---

[19] See on the contrary situation—confession on the separate character of property acquired by onerous title after the marriage—Judgment of the Supreme Court of Spain of February 2, 1951 (33 *Jurisprudencia Civil* 430), and IV VALVERDE, *Tratado de Derecho Civil Español* 368–69 (1938).

believable evidence on the gains received by her husband from unlawful games. In *Figueroa* v. *Bayrón,* 75 P.R.R. 928 (1954), we considered a similar situation and held that the community-property presumption did not apply in the case of a house acquired several days after contracting marriage, since there was evidence that the sole source of income of the conjugal property was a restaurant which the husband already owned before he was married, and there was nothing in the evidence worthy of credit that the purchase money was in any way the product of the enterprise or common effort of the spouses. See *Figueroa* v. *Aponte,* 45 P.R.R. 10 (1933).

However, regarding the house constructed between 1944 and 1946 on the lot on Brumbaugh Street, the evidence for the appellee was very flimsy. Neither the date nor the value of the construction was established in such a way as to enable us to conclude that the community partnership did not have the funds necessary for its construction. Nor can we accept that the business of the community partnership known as "El Estilo" was acquired with separate funds, so that the proceeds of the sale allegedly invested in the construction of the said building, as the court assumed, converted such building into separate property by substitution or subrogation. See *Robles* v. *Guzmán,* 67 P.R.R. 671 (1947). However, for the reasons stated as respects the property of 75.96 cuerdas, we will not disturb the trial court's conclusion on the separate character of the lots on Brumbaugh Street, but we do point out that according to the provisions of § 1304 of the Civil Code, 31 L.P.R.A. § 3644, as construed in *Salazar* v. *Registrar of San Juan,* 27 P.R.R. 59 (1919) ; *Suc. Santos Alonso, Ltd.* v. *Registrar of San Juan,* 26 P.R.R. 756 (1918) ; *Matheu* v. *Murillo et al.,* 25 P.R.R. 304 (1917), when the buildings are constructed with community funds on land belonging exclusively to one of the spouses, both—the land and the structures—become community property and upon

liquidation a credit for the amount of the cost of the lot is recognized to the spouse who contributed the same to the community partnership.

The other errors assigned by the appellant relative to the admissibility of evidence were not committed.

The judgment rendered by the Superior Court, San Juan Part, on August 30, 1956, will be modified.

